## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| MARY RUSSO, SANCHELLE JOHNSON, JULIANN CALLERY, and WENDI O'BRIEN, *individually and on behalf of all others similarly situated*, BRIANNA BENDIK, KYLE GREGO, AHMAD LEWIS, NEVERROL THOMPSON, RANDY BROWN, MARVIN RAVENEL, JUAN DOZIER, MARIA TURNER, MATTHEW SHREVE, MAE TAYLOR, SAMUEL HALVERSON, NICOLE FLOYD, DOLORES SMILEY, LUCINDA LIFERIDGE, JANELLE WRIGHT, LYNN WASHINGTON, JEREMY SHELTRA, PETER FORTNER, JASON POGAR, JESSICA ANCRUM, MEGAN FELKEL, JEREMY MCNEER, JANICA HUNTER, CHRISTIAN HALLOCK, SHERRYL ANDERSON, and KATHLEEN HARVEY, <br><br> Plaintiffs, <br><br> vs. <br><br> EASTWOOD CONSTRUCTION PARTNERS, LLC f/k/a Eastwood Construction, LLC f/k/a Eastwood Homes, Inc.; EASTWOOD HOMES, INC.; EXTERIOR CONTRACT SERVICES, LLC; SOUTHCOAST EXTERIORS, INC.; and ALPHA OMEGA CONSTRUCTION GROUP, INC., <br><br> Defendants. | No. 2:20-cv-4267-DCN <br><br> **ORDER** |

This matter comes before the court on plaintiffs Mary Russo, Sanchelle Johnson, Juliann Callery, Wendi O'Brien, Brianna Bendik, Kyle Grego, Ahmad Lewis, Neverrol Thompson, Randy Brown, Marvin Ravenel, Juan Dozier, Maria Turner, Matthew Shreve, Mae Taylor, Samuel Halverson, Nicole Floyd, Dolores Smiley, Lucinda Liferidge, Janelle Wright, Lynn Washington, Jeremy Sheltra, Peter Fortner, Jason Pogar, Jessica

1

Ancrum, Megan Felkel, Jeremy McNeer, Janica Hunter, Christian Hallock, Sherryl Anderson, and Kathleen Harvey's (collectively, "plaintiffs") motion to remand, ECF No. 9.  For the reasons set forth below, the court abstains from exercising jurisdiction over this action pursuant to Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), and dismisses it.

## I.  BACKGROUND

Plaintiffs filed this construction defect action against several of the contractors who constructed their homes—defendants Eastwood Construction Partners, LLC; Eastwood Homes, Inc. (collectively, "Eastwood"); Exterior Contract Services, LLC ("Exterior Contract"); Southcoast Exteriors, Inc. ("Southcoast"); and Alpha Omega Construction Group, Inc. ("Alpha Omega") (collectively, "defendants").  The thirty named plaintiffs bring their claims individually and on behalf of a proposed class of 388 "or more" homeowners, who plaintiffs allege are similarly situated.  ECF No. 1-1, Amend. Compl. ¶¶ 57–70.  They assert three causes of action: (1) negligence/gross negligence, (2) breach of implied warranties, and (3) unfair trade practices under the South Carolina Unfair Trade Practices Act ("SCUPTA").  Amend. Compl.  The allegations primarily concern the construction of plaintiffs' roofs.

Plaintiffs filed this action in the Charleston County Court of Common Pleas on August 27, 2020.  ECF No. 5-1.  Plaintiffs filed an amended complaint on December 4, 2020.  Amend. Compl.  Eastwood removed the action to this court on December 9, 2020, arguing that the court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1453 and 1332(d).  Plaintiffs' motion to remand argues that this action does not fall within CAFA's expansion of federal jurisdiction,

meaning that the court must remand it. Without diving too deeply into the merits of the motion to remand, the court addresses a few important aspects of that jurisdictional dispute, which it finds pertinent to the issue of abstention. For the court to have jurisdiction over this action pursuant to CAFA, defendants must demonstrate that there has been a similar class action filed against similar defendants within the last three years. 28 U.S.C. § 1332(d)(4)(A)(ii). As such, Eastwood states in its notice of removal that "Eastwood has been the subject of a similar putative class action within the last three years." ECF No. 1 at 2. One month later, plaintiffs filed their motion to remand, arguing that the court does not have CAFA jurisdiction because, among other reasons, no similar class actions have been filed within the last three years. ECF No. 9. In response, Eastwood disagrees, explaining that plaintiffs' counsel, one day prior to filing the instant action, filed a "duplicate" class action with the same allegations, same claims, and on behalf of the exact same class, Smiley v. Exterior Contract Services, No. 2020-CP-10-03786 (Chas. County Court of Common Pleas August 26, 2020) ("Smiley"). ECF No. 16 at 7. The only difference between Smiley and the instant action, Eastwood continues, is that Eastwood is named as a defendant in this action but not in Smiley. In reply, plaintiffs agree that Smiley is "a duplicate" of this action. ECF No. 19 at 2.[1] Further, plaintiffs' counsel concede that the filing of two duplicative actions was nothing more than an act of strategic procedural gamesmanship:

> The homeowners filed the Smiley action in state court against the subcontractor defendants who constructed their roofs—Exterior Contract [ ]; Southcoast [ ]; and Alpha Omega[.] Days later, the homeowners filed this action to add additional homeowners as plaintiffs and to add claims

---

[1] Nevertheless, in their motion to remand, plaintiffs argue that because the action is "duplicative" rather than "similar," CAFA does not give the court jurisdiction, meaning that remand is necessary. See ECF No. 19.

>against Eastwood.  <u>Due to concerns about Eastwood attempting to use purported arbitration provisions in agreements with certain homeowners to stay or delay Plaintiffs' pursuit of their claims</u>, . . . Plaintiffs opted to leave the <u>Smiley</u> action pending as a duplicate action in which Plaintiffs could proceed were this action stopped or delayed by Eastwood and its contracts with homeowners.

ECF No. 19 at 6–7 (emphasis added).

The court initially scheduled a hearing on the motion to remand for February 23, 2021.  During its preparation for the hearing, the court determined that the unique procedural circumstances of this case raised a jurisdictional issue more fundamental than those addressed in the motion to remand.  Accordingly, the court emailed the parties, postponing the hearing and requesting supplemental briefs on the issue of <u>Colorado River</u> abstention, pursuant to which, as the court discusses in much greater detail below, a federal court may dismiss an action "for reasons of wise judicial administration" when a concurrent action is pending in state court and extraordinary circumstances justify dismissal.  424 U.S. at 817.  Given the court's duty to vigorously police its own subject matter jurisdiction, <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999), the court raised this issue on its own initiative.

On March 8, 2021, plaintiffs and defendants filed supplemental memoranda on the issue.  ECF Nos. 36 and 37.  Defendants now take the position that abstention is inappropriate, meaning that the court should exercise jurisdiction over this action rather than dismiss it.  Ironically, though, defendants' argument against abstention requires them to contradict the position they adopted in opposing the motion to remand.  The doctrine of <u>Colorado River</u> abstention requires that the federal action be "substantially similar" to a concurrent state action.  <u>New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.</u>, 946 F.2d 1072, 1073 (4th Cir. 1991).  Opposing remand,

4

defendants argue that Smiley and this action are "duplicate[s]." ECF No. 16 at 7. Now, opposing abstention, defendants argue that Smiley and this action contain "significant differences," meaning that they are not "substantially similar." ECF No. 36 at 4. In other words, defendants paradoxical position requires them to simultaneously argue that the two relevant actions are "duplicates" yet not "substantially similar."[2] Because the court has given the parties the opportunity to present written arguments, this matter is ripe for the court's review.

## II. DISCUSSION

Article III's bestowal of federal jurisdiction over "cases" and "controversies" has instilled in district courts a "virtually unflagging obligation" to exercise that jurisdiction over matters properly brought before them. Colorado River, 424 U.S. 800 at 817. Nevertheless, Supreme Court jurisprudence has carved out "extraordinary and narrow" exceptions to that general duty to adjudicate in the form of several doctrines of abstention. Id. (quoting Allegheny Cty. v. Frank Mashuda Co., 360 U.S. 185, 188 (1959)); see also Burford v. Sun Oil Co., 319 U.S. 315, 334 (1943); Younger v. Harris, 401 U.S. 37, 54 (1971). The Supreme Court espoused one such doctrine in Colorado River, proclaiming that a district court may abstain from exercising jurisdiction over an action otherwise properly before it "due to the presence of a concurrent state proceeding" for "reasons of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 182 (1952)). While wise judicial policy and extraordinary circumstances may justify dismissal, courts must remain cognizant that

---

[2] Only a lawyer could take this position with a straight face.

"[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Id. at 814. As the Supreme Court noted, circumstances warranting abstention, "though exceptional, do nevertheless exist." Id. at 818. This case presents one such instance.

Two conditions must be present for a court to decline jurisdiction pursuant to Colorado River. First, "there must be parallel proceedings in state and federal court." Gannett Co. v. Clark Const. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." New Beckley Min. Corp., 946 F.2d at 1073. And second, "'exceptional circumstances' warranting abstention must exist." Gannett, 286 F.3d at 741. Courts in the Fourth Circuit employ the following factors to guide their analysis:

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463–64 (4th Cir. 2005). The Supreme Court has also instructed courts to consider the extent to which either action was initiated as a "defensive tactical maneuver." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 17 n.20 (1983); see also McLaughlin v. United Virginia Bank, 955 F.2d 930, 935 (4th Cir. 1992) (instructing courts to consider "whether either the state or the federal suit was a contrived, defensive reaction to the other."). These considerations are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," rather than as a "mechanical checklist." Id. at 21; see also Sto Corp. v. Lancaster Homes, Inc, 11 F. App'x 182, 187 (4th Cir. 2001) ("[A] decision

6

to abstain does not require the presence of all of the factors."); Moorer v. Demopolis Waterworks & Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004) ("One factor alone can be the sole motivating reason for the abstention."). The court discusses each requirement in turn and, finding that the extraordinary procedural circumstances of this lawsuit satisfy both, declines to exercise jurisdiction.

### A. Parallel Proceedings

The court has little difficulty concluding that this action and Smiley are "parallel proceedings," given that they involve "substantially the same parties" and "issues." New Beckley Min. Corp., 946 F.2d at 1073. For one, Smiley and the instant action assert identical claims. Compare ECF No. 16-1 with ECF No. 5-1. And in both actions those claims are asserted against the same defendants, save for Eastwood, who is a defendant here but not in Smiley. It is undisputed that both actions are brought on behalf of identical classes; in fact, each complaint contains an identical list of 388 addresses representing the affected properties. Id. Likewise, it's undisputed that both actions allege the same roofing defects. And fundamentally, as the court discussed above, plaintiffs' counsel admitted that they filed Smiley and the instant lawsuit as "duplicate" actions for a strategic purpose. ECF No. 19 at 6–7. Delving deeper into plaintiffs' strategy, the court has deduced the following from plaintiffs' papers. Before initiating litigation, plaintiffs believed that Eastwood had legitimate, but not surefire, grounds to compel arbitration. As such, they had a choice to make. They could bring an action that did not include Eastwood, forgoing a set of deep pockets but ensuring that the case would not be compelled to arbitration. Or, they could include Eastwood in the lawsuit, taking a shot at Eastwood's deep pockets but risking arbitration. Faced with this fork in the road,

plaintiffs declined to choose and, not heeding Yogi Berra's advice,[3] opted to go down both roads simultaneously—on the backs of Smiley and this action.  By filing near-duplicate actions, plaintiffs attempt to have their cake and eat it too.  Plaintiffs proceed in this action against all defendants, including Eastwood, and simultaneously proceed in Smiley as a back-up plan to which they can resort in the event that Eastwood stymies this action by compelling arbitration.  In short, these are the same suits.

Despite their previous—as recently as January—contention that the lawsuits are "duplicates," defendants now argue that this action and Smiley are not "parallel proceedings" because "the parties are different."  ECF No. 36 at 3.  To be sure, the parties in this action are distinct from the parties in Smiley in two respects.  First, the named plaintiffs are different.  But this seems to be the result of another tactical maneuver by plaintiffs, rather than a meaningful difference between the two actions.  Plaintiffs explain that named plaintiffs in Smiley "are the spouses and/or co-property owners" of the named plaintiffs in this action.  ECF No. 37 at 3.  Despite plaintiffs' procedural gymnastics, whatever the underlying motivation may have been, it seems clear that the named plaintiffs in both actions are the same parties in interest, residing in the same allegedly defective homes.  Moreover, as the court discussed above, the proposed classes are identical, meaning that any eventual relief in either action would fall to the same class members in both suits.  See Ross v. U.S. Bank Nat. Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (For the purpose of a Colorado River abstention analysis "[i]n a class action, the classes, and not the class representatives, are compared.").

---

[3] The sagacious Berra often advised, "When you come to a fork in the road, take it!"

Second, defendants point out that Eastwood is a defendant in this action but not in the Smiley action. This argument is also unconvincing for two reasons. First, the law is clear that parties in concurrent proceedings need not be identical for the proceedings to be "parallel" under Colorado River. Sto Corp, 11 F. App'x at 187 ("The absence of [ ] one party does not defeat the parallel nature of the lawsuits."). Moreover, plaintiffs explain that they "recently requested consent from the defendants in [Smiley] . . . to name as additional defendants [Eastwood,] which would result in identical parties in both actions." ECF No. 37 at 3. In other words, the plaintiffs in Smiley have proposed an amendment to add Eastwood to that action. As such, it is clear that Smiley and this action are "parallel proceedings."

### B. Exceptional Circumstances

Even where a district court's action is "parallel" to a competing state court action, the court may only abstain in the presence of "exceptional circumstances." Gannett, 286 F.3d at 741. Consideration of the relevant factors leaves the court with little doubt that the circumstances of this lawsuit are sufficiently exceptional to warrant abstention.

### 1. In Rem Jurisdiction

The first factor is "whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others." Chase Brexton, 411 F.3d at 463. Although this lawsuit arises from alleged property damage, neither this action nor Smiley would require a court to assert in rem jurisdiction over property. The absence of this factor weighs only slightly against abstention, as courts rarely accord such absence significant weight. See, e.g., Sto Corp., 11 F. App'x at 187

("This case does not involve property[;] [h]owever, a decision to abstain does not require the presence of all of the factors.").

### 2. Convenience of the Federal Forum

Next, courts routinely consider "whether the federal forum is an inconvenient one." Chase Brexton, 411 F.3d at 463. Here, it clearly is not. Only Broad Street separates the forums in this instance, meaning that they are equally convenient for all involved. As such, this factor weighs against abstention.

### 3. Avoiding Piecemeal Litigation

In determining whether to abstain, courts must also consider "the desirability of avoiding piecemeal litigation." Chase Brexton, 411 F.3d at 463–64. Colorado River's progeny reveals that courts generally accord this factor greatest weight. See Moses H. Cone, 460 U.S. at 16 (stating that the threat of piecemeal litigation was "[b]y far the most important factor" in deciding Colorado River). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Gannett, 286 F.3d at 744 (quoting Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)). "But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Colorado River, 424 U.S. at 816. The threat of piecemeal litigation increases where parallel proceedings, while substantially similar, include parties or issues distinct from one another, such that resolution of one action would leave issues in the other unresolved. Sto Corp., 11 F. App'x at 187 (Inconsistent claims and parties "present a problem in addition to the inherent inefficiency of parallel litigation."). Even the presence of a single additional party or claim in one proceeding

presents a threat of piecemeal litigation that weighs in favor of abstention. Id. ("[B]ecause of the presence of at least one other party in the state suit, there is a possibility of piecemeal litigation.").

This factor weighs strongly in favor of abstention for two reasons. First, the parallel proceedings have evolved separately and are now slightly distinct with respect to the parties and claims involved. As discussed above, Eastwood is not yet a party to Smiley but is a party here. Gannett, 286 F.3d at 745 (A court should "address whether abstention is appropriate based upon the current posture of the state court action[]."). Moreover, plaintiffs state that they have joined two additional parties, Ciro Lopez and Juan Garzas Ramos, as defendants in Smiley, and that Exterior Contract has asserted crossclaims against those defendants there. Thus, Smiley now involves parties and claims not present in this suit, vastly increasing the potential for inconsistent, piecemeal resolution of plaintiffs' claims. See Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 30 (1st Cir. 2010) (finding that the inclusion of distinct parties in the parallel proceedings created a potential for "fragmented adjudication, to be distinguished from merely duplicative adjudication"). While this action and Smiley remain "substantially similar" and thus parallel proceedings under Colorado River, the differences that have developed between the two increase the threat of inconsistent adjudication, a consideration that weighs heavily in favor of abstention.

Second, like in Colorado River, the applicable law here sets a "clear policy" of avoiding piecemeal litigation. 424 U.S. at 819. Plaintiffs bring this action individually and on behalf of a class pursuant to Fed. R. Civ. P. 23. The class action device "serves important public purposes," aspiring to "achieve economies of time, effort, and expense,

and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003) (alterations in original) (quoting In re A.H. Robins Co., Inc., 880 F.2d 709, 740 (4th Cir. 1989)).[4]  The efficient and consistent resolution of like claims among persons almost identically situated lies at the heart of the policy underlying the class action device.  The existence of parallel, competing class actions in different forums, each of which possessing certain individualities, undercuts that clear federal policy by presenting a significant threat of inconsistent adjudication among members of two classes whose members have identical claims.  Thus, like in Colorado River, the court must consider the underlying policy against piecemeal litigation present here, which weighs strongly in favor of abstention.

### 4. Order of Proceedings

Next, courts consider "the relevant order in which the courts obtained jurisdiction and the progress achieved in each action." Chase Brexton, 411 F.3d at 464.  Plaintiffs' counsel filed Smiley on August 26, 2020 and this action on August 27, 2020.  Therefore, the order of filing slightly weighs in favor of abstention.  Of course, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21.  Progress-wise, this consideration is a wash.  The parties indicate that little progress has been made in Smiley.  While some progress has been had here—the filing of motions to

---

[4] A similar policy undergirds South Carolina's class action device, S.C.R.C.P. 23. "[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." Grazia v. S.C. State Plastering, LLC, 703 S.E.2d 197, 204 (S.C. 2010).

remand and stay—little forward progress has been had, in that the court is no closer to reaching the merits of plaintiffs' claim. As such, this consideration, overall, weighs slightly in favor of abstention.

### 5. Applicable Law

Courts also consider "whether state law or federal law provides the rule of decision on the merits." Chase Brexton, 411 F.3d at 464. The parties agree that state law exclusively provides the rules of decision here. Plaintiffs assert two ordinary common-law claims and one claim under a South Carolina statute. Thus, this factor weighs in favor of abstention.

### 6. Protection of Parties' Rights

Next, the court considers "the adequacy of the state proceeding to protect the parties' rights." Id. That plaintiffs' claims are governed exclusively by state law suggests that state court is an adequate forum to protect the parties' rights. Ackerman v. ExxonMobil Corp., 821 F. Supp. 2d 811, 821 (D. Md. 2012), aff'd, 734 F.3d 237 (4th Cir. 2013). There is no indication that the state court is incapable of providing plaintiffs a just process to obtain relief or defendants a fair opportunity to present a defense.[5] As such, this factor, too, weighs in favor of abstention.

---

[5] Defendants cite Steinberg v. Nationwide Mut. Ins. Co. for the proposition that the federal court is better equipped to handle class actions, evidence of which can be found in Congress's expansion of federal jurisdiction pursuant to CAFA. 418 F. Supp. 2d 215, 225 (E.D.N.Y. 2006). Their reliance is misplaced. In Steinberg, the court found that federal court was an equally appropriate forum for a class action filed in state court. The court reasoned, "Congress has concluded that the federal court is the 'appropriate forum' for such cases because it is better suited to handle nationwide issues." That logic does not apply here because plaintiffs' allegations involve wholly local harms. Moreover, the court there was concerned with whether the court "[wa]s inadequate to protect the plaintiff's rights;" here, defendants argue that state court would not be adequate to protect their rights. Id. at 225. Those inquires are distinct.

### 7. Vexatious or Reactive Nature of Either Proceeding

Finally, the court considers the extent to which either proceeding was initiated as a "defensive tactical maneuver." Moses H. Cone, 460 U.S. at 17 n.20. "[T]he vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River." Id. In the ordinary circumstance, courts give this factor credence where a defendant files a federal suit in an obvious attempt to frustrate an ongoing state court action. See, e.g., Telesco Fuel & Masons Materials, Inc., 765 F.2d 356, 363 (2d Cir. 1985). That is not the case here. As the court detailed above, plaintiffs' counsel filed two duplicative suits and did so with respect to each in state court. Nevertheless, the court finds this consideration apropos here because, like the defendant in Telesco, plaintiffs filed this action in state court as a purely strategic move, bereft of any substantive or merits-based justification. In that sense, this action is nothing more than a "defensive tactical maneuver," a preemptive strike to avoid Eastwood's ability to compel arbitration. Moses H. Cone, 460 U.S. at 17 n.20. Further, defendants' removal of this back-up suit is akin to "procedural fencing"—that is, a device "'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" Allstate Prop. & Cas. Ins. Co. v. Cogar, 945 F. Supp. 2d 681, 692 (N.D.W. Va. 2013) (quoting Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 377 (4th Cir. 1994)). Defendants have removed this action while leaving Smiley pending in state court, thereby utilizing this action as a vehicle to obtain a more expeditious judgment in what they perceive to be a more

favorable forum. Thus, the fact that this action is the result of procedural gamesmanship weighs heavily in favor of abstention.

In sum, the aggregate weight of the factors falls heavier on the abstention side of the scale. Both parties have argued that the suits are not just similar but "duplicates." Further, the minor distinctions that have developed between the proceedings since their filings creates a substantial threat of piecemeal litigation, undercutting the federal policy present here. Additionally, plaintiffs' counsel filed Smiley first, and the identical claims in both actions involve purely state law claims. Finally, plaintiffs' filing of the instant suit is nothing more than a strategic ploy, and defendants' removal thereof is little more than procedural fencing. Finally, no rights will be significantly prejudiced by the court's abstention, for the claims and defenses of all parties remain in the capable hands of the Charleston County Court of Common Pleas. In short, this action would not exist but for the bizarre and problematic procedural maneuverings of the parties. The court therefore declines to exercise jurisdiction over it.

### III.   CONCLUSION

For the foregoing reasons the court **DISMISSES** the action.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**March 18, 2021**
**Charleston, South Carolina**